Jory Ruggiero
Domenic Cossi
Adam M. Shaw
WESTERN JUSTICE ASSOCIATES, PLLC
303 W. Mendenhall St. #1
Bozeman, MT 59715
jory@westernjusticelaw.com
domenic@westernjusticelaw.com
adam@westernjusticelaw.com
Phone: (406)-587-1900
*Attorneys for Plaintiff*

Steve Beardsley *(to be admitted pro hac vice)*
Conor Casey *(to be admitted pro hac vice)*
BEARDSLEY, JENSEN & LEE, Prof. L.L.C
P.O. Box 9579
Rapid City, SD 57709
sbeards@blackhillslaw.com
ccasey@blackhillslaw.com
Phone: (605) 721-2800
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | | |
|---|---|---|
| MICHELLE STOVERN, as PERSONAL REPRESENTATIVE OF THE ESTATE OF ASHTON CLARK GILLMING STOVERN, | ) ) ) ) ) | Civ. No.: CV-23-00029-GF-BMM |
| Plaintiff, | ) ) | **COMPLAINT FOR DAMAGES** |
| vs. | ) ) ) | **and** |
| BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY, and JOHN DOES 1-5, | ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendants. | | |

_____

1

COMES NOW Plaintiff, by and through counsel, and for their causes of action against Defendant alleges as follows:

**PARTIES**

1. Plaintiff Michelle Stovern is the duly appointed Personal Representative of the Estate of Ashton Clark Gillming Stovern.

2. Plaintiff Michelle Stovern brings this action for the benefit of the members of the class of individuals authorized to receive the benefit of a wrongful death action pursuant to Mont. Code Ann. § 27-1-513 and a survival action pursuant to Mont. Code Ann. § 27-1-501 for the injury and subsequent death of Ashton Clark Gillming Stovern ("Ashton Stovern").

3. Defendant BNSF Railway Company (hereinafter "BNSF") is a corporation that does business in and owns lines of railways in the State of Montana and holds a certificate of authority to transact business in the State of Montana. BNSF's headquarters in Fort Worth, Texas.  Defendant BNSF may be served with process through its Registered Agent: Michelle T. Friend, 2800 Central Ave., Suite C, Billings, Mt. 59102-4666.

4. At all times pertinent hereto, all employees of BNSF were acting in their individual capacities and also as agents of BNSF, within the scope of their employment and authority and in furtherance of the business of BNSF.  All the acts and omissions of the employees of BNSF are imputed to their employer, who is liable for such acts and omissions, as well as rendering the individuals liable in their individual capacities.

5. John Doe Defendants are other businesses or entities unknown to Plaintiff at this time who may have liability for the damages alleged herein.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332.

7. This Court has jurisdiction over the parties pursuant to Rule 4, Fed. R. Civ. P., because this action specifically arises out of the Defendant's conducting business and committing tortious acts in Montana.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this judicial district since the subject train crash occurred in Roosevelt County, Montana.

9. All allegations herein related to Defendant should be interpreted to state causes of action seeking damages under state law for personal injury, death, survivorship and/or property damage, based upon one or more of the following:

    a. Defendant failed to comply with the federal standard of care established by regulations or orders issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad safety matters), covering the subject matter as provided in subsection (a) of 49 U.S.C. § 20106;

    b.    Defendant failed to comply with their own plans, rules or standards that they created pursuant to a regulation or order issued by either of the Secretaries; or

    c.    Defendant failed to comply with common law, state laws, regulations and orders that are not incompatible with subsection (a)(2) of 29 U.S.C. § 20106.

## ACCIDENT DESCRIPTION

10. On or about July 28, 2020, at approximately 11:02 a.m., Ashton Stovern was driving a 2011 Freightliner Cascadia semi north-bound on 3721 BIA Route.

11. As Ashton Stovern was driving North along 3721 BIA Route 1, he approached a railroad grade crossing that interests 3721 BIA Route 1, U.S. DOT Crossing No. 059606K (herein "BNSF CROSSING" or "Crossing").

12. The truck driven by Ashton Stovern was struck by a BNSF freight train traveling eastbound in excess of 55 miles per hour. Mr. Stovern survived for an appreciable and significant amount of time, but died from his injuries at the scene of the collision.

## CROSSING DESCRIPTION

13. BIA Route 1 3721 is a road that connects with BIA Route 1. This road travels in a north-south direction from BIA Route 1.

14. BIA Route 1 connects with U.S. Highway 2.

15. The BNSF Crossing is an above-grade, unguarded crossing that does not have any active warnings. The crossing is owned by BNSF. The railroad track at this crossing travels west and east. The approach roadway from north-to-south is approximately 137' from BIA Route 1. The approach roadway from south-to-north extends over 1500' into a gravel field and various agricultural fields.

16. The approach roadway from the south-to-north sustains an approximate 6' elevation gain.

17. The BNSF Crossing has substantial visibility obstructions:
    a.  Multiple grain silos;
    b.  Storage hangers;
    c.  A two-story home;
    d.  A single-story home;
    e.  Storage bins;
    f.  Cottonwood trees
    g.  Juniper trees; and
    h.  Bushes.

18. Approximately 400 feet west from the crossing the tracks bend southward.

19. There were no crossbucks present at the BNSF Crossing at the time of the events that gave rise to this complaint.

20. There were no active warning systems present at the BNSF Crossing at the time of the events that gave rise to this complaint.

21. There was a stop sign on the north-side of the BNSF Crossing, located approximately 15' from the crossing.

22. There was no stop sign on the south-side of the BNSF Crossing. There was a sun-bleached stop sign laying in the ditch on the south-side of the BNSF Crossing.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**(NEGLIGENCE AND NEGLIGENCE PER SE)**

23. All allegations in this Complaint are incorporated herein.

24. BNSF has a duty to exercise reasonable care to avoid injuring or killing members of the public. In this case, BNSF breached its duty by failing to exercise reasonable care. As a direct and proximate result of BNSF's breach of its duty, the Plaintiff suffered damages, as alleged herein. All acts or omissions of Defendant constitute negligence, gross negligence, willful and wanton conduct, recklessness, intentional conduct, and demonstrate a reckless and intentional disregard for the safety of the motoring public.

25. BNSF's conduct alleged herein violates rules, statutes and regulations designed to protect the motoring public, including Plaintiff. BNSF's violation of these authorities constitutes negligence per se.

26. BNSF knew that its conduct alleged herein would give rise to a high likelihood of harm to Plaintiff. BNSF acted with intentional indifference to this high likelihood of harm. BNSF acted with malice under Montana law and should be subject to punitive damages.

27. The public has come to rely upon the following three basic components as essential to railroad crossing safety: (1) reasonable and timely

audible warning of an approaching train; (2) reasonable and timely visual warning of an approaching train, and (3) a safe place to cross the tracks. The Defendant has actively worked to instill these fundamental beliefs into the motoring public. In this case, none of these three basic components were provided to Ashton Stovern prior to the crash.

28. Defendant has a duty to exercise reasonable care to avoid injuring or killing members of the public. In this case, Defendant breached their duty by failing to exercise reasonable care in the operation of trains over this crossing, failing to properly maintain the crossing environment, and failing to provide adequate warning of the approaching train.

### Inadequate Audible Warning

29. The Defendant, and their agents and employees, breached the duty to give reasonable and timely warning of the train's approach by failing to give a proper audible warning.

30. Defendant breached their duty to ensure that the train horn was properly sounded to warn of the train's approach to the railroad crossing. To be "properly sounded" the horn must be loud enough and it must be blown in the correct sequence and for a sufficient duration. The horn was not properly sounded.

31. Defendant and its crew breached the duty to ensure the horn on the locomotive involved in the subject crash complied with the audibility requirements of 49 C.F.R. § 229.129.

32. Defendant and its train crew breached the duty to properly sound the horn to warn of the train's approach because the horn was not sounded in the correct sequence or for a sufficient duration prior to the collision.

33. Defendant breached the duty to provide an adequate warning at this crossing because it did not require trains being operated over the BNSF Crossing to sound an audible warning.

34. The investigation of this crash revealed no evidence that Ashton Stovern was provided an adequate audible warning from the train prior to the crash. Ashton Stovern was physically unable to hear the train horn in sufficient time to react and avoid the crash, and no fault should be assessed to him for not hearing and responding to such an inaudible warning.

### Inadequate Visual Warning

35. The Defendant breached the duty to give reasonable and timely warning of the train's approach by failing to provide for an adequate visual warning.

36. Visual warning of the train's approach to this crossing requires the illumination of headlights and auxiliary lights in compliance with 49 C.F.R. § 229.125. It also requires unimpaired sight distances for motorists to see those headlights and auxiliary lights.

37. The crossing where this accident occurred had inadequate approach sight distances to provide an approaching driver with an unimpaired sight distance down the roadway to determine the location of the crossing, its condition, the type of warning devices, and whether it is or soon will be

occupied by a train. This condition of an inadequate approach sight distance should have been reported by the Defendant and addressed by a cooperative effort of BNSF and adjoining landowner to take any reasonable steps to provide motorists with an unimpaired approach sight distance or to warn of the obstruction. The lack of an unimpaired approach sight distance was one of the contributing factors that caused the subject crash. Accordingly, the Defendant breached the duty to provide a reasonably safe crossing.

38.     The crossing where the crash occurred had impaired "sight triangles." A driver approaching this crossing within the speed limit should be provided unimpaired visibility to allow observation of a train simultaneously approaching the crossing. The unimpaired view must be efficient for the driver to see the train, react, and stop short of the crossing. This condition of inadequate sight triangles should have been reported by Defendant and addressed by a cooperative effort of BNSF and the adjoining landowner. BNSF failed to take any reasonable steps to provide motorists with adequate sight triangles or to warn of their inadequacy. The lack of adequate sight triangles for a driver approaching the crossing was one of the contributing factors that caused this crash. To the extent visibility obstructions at this crossing were off the railroad right-of-way, BNSF should have exercised reasonable care to work with adjoining landowners and or the local road authority and also provide adequate warnings to provide a reasonably safe crossing. This was not done. Accordingly, BNSF breached its duty to provide a reasonably safe crossing.

39.     Defendant failed to clear visibility obstructions from its own right of way to provide motorists with an adequate view down the track in both directions. This condition should have been reported by the Defendant and addressed by the Defendant. The lack of adequate sight distance down the right-of-way was one of the contributing factors that caused this crash. Accordingly, Defendant breached the duty to provide a reasonably safe crossing.

40.     BNSF knew that the areas surrounding the Crossing and other similarly situated crossings were not adequately clear of brush, trees, debris, grain silos, and other visual obstructions and visual clutter.  These obstructions to visibility create safety hazards for motorists using this crossing. BNSF failed to properly train their employees to recognize safety hazards caused by visibility obstructions. Because of this inadequate training, the obvious safety hazards at this crossing were unreported prior to this crash.

## Improper Train Operation

41.     As specified herein, there were hazardous conditions at this grade crossing that existed for an extended period of time before this crash.  Those conditions have been ignored by train crews, maintenance crews, and other employees of the Defendant.  As a result, its employees, including train crews are aware that railroads condone the existence of these hazardous conditions.

42.     The area in and around this crossing should have been protected by a slow order for rail traffic traversing this crossing.  If such a slow order was in effect for this section of track, then it was violated by the BNSF train crew

involved in this accident. If such a slow order was not in effect for this section of track, then BNSF wrongfully failed to issue such a slow order. In either event, the failure of the train involved in this accident to slow for the unsafe conditions at this crossing was a contributing factor to this accident.

  43. The crew breached their duty to slow or stop the train to avoid "a specific, individual hazard" at this crossing prior to the crash. They also failed to approach the crossing prepared to stop due to "an essentially local safety hazard." If the crew would have been prepared to stop, slowed the train, and or applied the brakes in a timely fashion they could have avoided the collision or changed the dynamic of the collision to the extent that the Plaintiff's damages from the collision could have been significantly reduced or eliminated.

  44. At the time of this crash the conditions at this crossing created "an essentially local safety hazard." However, the BNSF negligently failed to recognize essentially local safety hazards, failed to instruct train crews and other employees about how to identify essentially local safety hazards, failed to instruct train crews and other employees about how to identify essentially local safety hazards, failed to take any reasonable steps to reduce essentially local safety hazards, and failed to warn of their existence. Accordingly, the train crew did nothing to slow the train, prepare to slow the train, or otherwise account for the local safety hazards at this crossing. The existence of an unidentified and unaccounted for local safety hazard was one of the contributing factors that caused this crash.

45. The Defendant also failed to instruct train crews on the appropriate circumstances under which they should be prepared to brake, slow, or stop the train for safety hazards at railroad crossings. Defendant knows the risks to the motoring public created by the failure to instruct train crews about the duty to slow or stop the train to avoid safety hazards at railroad crossings, but they have elected to not instruct crews about these duties. This lack of training and preparedness was one of the contributing factors that caused this crash.

### Failure To Inspect and Repair Unsafe Crossing

46. The hazardous crossing conditions described herein were not properly identified, documented, reported, nor repaired by BNSF and its employees. BNSF knew or should have known that the existence of these hazardous conditions created an unsafe crossing.

47. Many factors have combined to render this crossing unsafe and hazardous for motorists. Identified below are some but not all of the factors that have combined to render this crossing unsafe. This combination of track conditions required remedial action to allow for safe operations over this crossing by motorists and railroad traffic. If BNSF would have properly conducted track inspections at this crossing, the hazardous conditions at this crossing would have been identified and remedial action taken long before this crash, thereby preventing this crash.

## Specific Unsafe Crossing Conditions

48. The driving task for a motorist at this crossing has been made complex by a variety of characteristics. One of those characteristics are visibility obstructions, discussed generally above in the section on "inadequate Visual Warning." Those obstructions create impairment to view and distractions to the attention of a motorist at this crossing, making this crossing more complex and hazardous. These visibility obstructions combined with the characteristics listed below to complicate the driving task at this crossing.

49. The horizontal alignment of the track and roadway at the BNSF Crossing combined with the short approach to the Crossing are some of the characteristics of the Crossing contributing to the overall complexity and hazard of the Crossing. Crossings located on either roadway or railroad curves will require special consideration. The road and tracks at this crossing intersect at a skewed angle near a curve, which were characteristics of the crossing contributing to the complexity and hazard of the driving task.

50. The grade of the roadway was lower than the crossing itself and was one of the characteristics of the Crossing contributing to the complexity and hazard of the driving task.

51. The maintenance of the transition between the approach roadway and the wooden surface and the poor condition of those materials were some of the characteristics of the Crossing contributing to the complexity of the driving task.

52. The rough and unstable transition between the approach roadway and the wooden crossing surface, resulting from poor maintenance, was one of the characteristics of the Crossing contributing to the complexity and hazard of the driving task.

53. The lack of proper signage, signals, crossbucks, flashing lights, bells, and other traffic control options, and the lack of maintenance of such hazard indicators were some of the characteristics of the Crossing contributing to the complexity and hazard of the driving task.

54. The design and construction of the hazardous crossing, and the lack of consideration of the numerous hazardous indicators and characteristics that made the Crossing complex and dangerous.

## Failure To Report Unsafe Conditions

55. BNSF had actual or constructive knowledge that all of the above-mentioned characteristics and conditions make crossings more complex and more hazardous for motorists. Instead of correcting or accommodating for these hazardous characteristics and conditions, BNSF elected to ignore their existence. As a result, employees are aware that BNSF does not want them to report hazardous conditions that are known to make crossings like this unsafe. The Defendant knew, or should have known, that this failure to report and address unsafe crossing characteristics and conditions, would result in unnecessary loss of life and injuries.

56. BNSF's failure to require reporting of unsafe crossing conditions is a violation of their General Code of Operating Rules that have been filed with

the Federal Railroads Administration as a prerequisite to operate as a railroad in the United States. The failure to require reporting of these unsafe crossing conditions is also a violation of the federal regulations that require the Defendant to instruct their employees to comply with their own operating rules.

**Signs, Signals, and Markings, Failure To Maintain Adequate Signage, and Failure To Warn of Inadequate Signage**

57. BNSF must work with local landowners to evaluate crossing conditions and characteristics. BNSF also knows it must work jointly with the local landowners to maintain a reasonably safe crossing that will allow for reasonably safe passage across its tracks. However, BNSF failed to work jointly with the local landowners to this crossing by failing to share necessary information, failing to establish an open line of communication, and failing to engage in any effort to evaluate crossing conditions and characteristics at the Crossing. BNSF knows that it has superior knowledge and opportunity to evaluate crossings but elected not to utilize its superior knowledge, opportunity, or any of its own resources to improve crossing safety. Accordingly, hazardous conditions at the crossing were ignored, and the crossing was not adequately protected with signal devices to provide the reasonable motorist with sufficient information for reasonably safe passage over the crossing.

58. BNSF breached its duty to install adequate warning devices at this crossing despite possessing knowledge that conditions existed at the crossing which prompted their duty to install adequate warning devices comes from both state law and federal law. Under the principles of state common law, the

conditions and characteristics at this crossing were such that they rendered this crossing "extra-hazardous," "ultra-hazardous," and/or "unusually dangerous." As a result, BNSF is required to take additional measures to protect those using the crossing, including, but not limited to, installing automatic gates with flashing light signals, maintaining the minimal signage that was already present, or other low-cost active or inactive warning devices at this crossing. Such an installation would not unreasonably burden any railroad or interstate commerce. Further, pursuant to 23 C.F.R. § 646.214(b)(3)(i) the warning devices at this crossing should have included "automatic gates with flashing light signals." The warning devices at this crossing should have included automatic gates with flashing light signals because, among other things, high-speed train operation at this crossing is combined with impaired sight distances.

59.   BNSF breached its duty to install adequate warning devices at this crossing by failing to install alternative low-cost active or inactive warning systems or devices. BNSF did nothing to provide crossings such as this with any alternatives concerning low-cost active or inactive warning systems or devices, despite knowing that such devices or systems are effective at reducing accidents at crossings.

60.   BNSF breached its duty by failing to warn of inadequate/defective warning devices. BNSF was aware that the warning devices located at this crossing were not only inadequate, but defective. BNSF did nothing to warn

any party traversing this crossing of the inadequate/defective warning devices that were present at this crossing.

61. Defendant breached its duty in failing to maintain and secure the warning devices located at this crossing. The minimal warning devices located at this crossing were defective. The stop sign on the south side of the crossing was sun-bleached and face-down in the ditch. BNSF was aware that the warning devices at this crossing were defective and it failed to maintain such warning devices.

### Improper Training, Instruction and Management

62. Pursuant to 49 C.F.R. §§ 217.11 and 218.11, BNSF is required to instruct its employees concerning proper operating practices and operating rules. These regulations require proper instruction, supervision, and monitoring of employees to protect the public from unsafe practices and conditions. BNSF failed to appropriately instruct, supervise, and monitor their employees in that regard.

63. BNSF intentionally instructed its crews and other employees that there is nothing the railroad can do to prevent accidents or reduce risks to the public despite the knowledge that such an assertion is false. The Defendant's failure to properly instruct their employees concerning public safety contributed to the crash in this case.

64. The Defendant knows that they are supposed to utilize a systems safety approach to provide a comprehensive method for addressing safety issues at crossings, but they have refused to implement any system safety

program for crossing safety. They have chosen to ignore hazards that would be readily identified in a system safety analysis.

## DAMAGES

65. The aforementioned acts of negligence, negligence per se, gross negligence, recklessness, willfulness, wantonness, and or the intentional acts of the Defendant, individually and collectively, were a direct and proximate cause of BNSF's train striking Ashton Stovern as alleged herein.

66. As a result of BNSF's negligence, Mr. Stovern and his estate sustained damages including, but not limited to, bodily injury, pain and suffering, emotional distress; loss of course of life, lost lifetime earnings and compensation, medical bills, and funeral bills. Plaintiff's damages are far in excess of $75,000.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by 6-person jury of any issue triable of right by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to:

a. Award compensatory damages to the Plaintiff as proved at trial;

b. Award punitive damages to Plaintiff as proved at trial;

c. Award Plaintiff costs and attorney's fees, pre-judgment and post judgment interest, all other damages allowed by law, and such other further relief the Court deems just and equitable.


Dated this 6th day of June, 2023.

                        WESTERN JUSTICE ASSOCIATES, PLLC


                         /s/ Jory C. Ruggiero
                        Jory C. Ruggiero, Esq.
                        Adam M. Shaw. Esq.
                        Domenic A. Cossi, Esq.
                        303 W. Mendenhall, Suite 1
                        Bozeman, MT 59715

                        *Attorneys for Plaintiff*


                        BEARDSLEY, JENSEN & LEE, Prof. L.L.C
                        Steven C. Beardsley *(to be pro hac vice)*
                        Conor P. Casey *(to be pro hac vice)*
                        4200 Beach Drive, Suite 3
                        P.O. Box 9579
                        Rapid City, SD  57709

                        *Attorneys for Plaintiff*