**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| MICHELLE STOVERN, as personal representative of the estate of Ashton Clark Gillming Stovern, | **CV-23-29-GF-BMM** |
| Plaintiff, | |
| vs. | **ORDER ON SANCTIONS** |
| BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY, and JOHN DOES 1-5 | |
| Defendant. | |

**INTRODUCTION**

Burlington Northern Santa Fe Railway Company ("BNSF") filed a motion for sanctions based on the spoliation of evidence. (Doc. 47.) Plaintiff Michelle Stovern ("Stovern"), as personal representative of the Estate of Ashton Clark Gillming Stovern ("Decedent"), declined to have an autopsy performed on her son, Decedent, following his death. BNSF has filed a motion for sanctions as Stovern's decision to reject an autopsy caused spoliation of evidence relevant to BNSF's defense of Stovern's survival claim. Stovern opposes the motion. (Doc. 84.)

## FACTUAL BACKGROUND

A BNSF train tragically struck Decedent at a railroad crossing near Brockton, Montana ("Crossing") on July 28, 2020. (Doc. 1.) Decedent was driving north along the Bureau of Indian Affairs Route 1 ("BIA Route"), when he reached the Crossing. (Doc. 1 ¶¶ 13.) BNSF's railcar struck Decedent traveling east at 57 miles per hour. (Doc. 83 ¶ 2., Doc. 41 ¶ 16.) Decedent was operating a seventy-five foot-long semitruck and trailer, while transporting gravel for his employer, Norby's, Inc. ("Norby's"). (Doc. 41 ¶ 6-7, Doc. 83 ¶ 4.) Stop signs marked the Crossing for traffic traveling north and south along the BIA Route. (Doc. 41 ¶ 11.) Decedent died at twenty-four years old from the injuries sustained in the accident. (Doc. 83 ¶ 4.)

Sheriff Jason Fredrick sought an autopsy of Decedent following the accident. (*Id*. ¶ 19, Exhibit C.) Stovern had just learned of Decedent's death when asked about what to do with Decedent's body. (*Id*.) Stovern informed Sheriff Frederick two and half hours after the accident that she did not want an autopsy performed on Decedent. (*Id*.) BNSF alleges that Sheriff Frederick indicated to Stovern that performing an autopsy would be beneficial if Stovern later would file a lawsuit against BNSF. (*Id*. ¶ 20.) Stovern requested that Decedent's body be sent to the Sidney Funeral Home as soon as possible without an autopsy being performed. (Doc. 83 ¶ 7.)

The Richland County Coroner ("Coroner") determined that Decedent died of blunt force trauma to the head and chest. (Doc. 83 ¶ 9.) The Coroner further found that Decedent had survived "second/minutes" after impact with the BNSF railcar. (*Id*.) Stovern retained two experts, Dr. Ziejewski and Dr. Rayes, on the issue of Decedent's survival time. (Doc. 41 ¶ 22.) Both Dr. Ziejewski and Dr. Rayes testified "consistent with Decedent's Death Certificate that he survived 'seconds/minutes' after impact." (Doc. 83 at 24.) Dr. Ziejewski and Dr. Reyes also testified that Decedent could have suffered multiple fatal injuries from impact. (Doc. 41 ¶ 23.)

BNSF argues that the determination of whether Decedent survived the accident for an "appreciable amount of time" remains unknown without an autopsy. (Doc. 40.) BNSF contends that Stovern's decision to forego having an autopsy performed constitutes spoliation and destruction of the best evidence for BNSF's defense to the survival claim. (Doc. 45 at 3-4.) BNSF contends that the decision not to perform an autopsy benefits Stovern for the survival action. (*Id*. at 3.) BNSF contends that, absent an autopsy, substantial uncertainty exists as to whether Decedent survived for "an appreciable amount of time" after impact. (Doc. 45 at 3.) BNSF asks the Court to enter a default judgment on Stovern's survival claim as a sanction for denying an autopsy. (*Id*. at 4.) In the alternative, BNSF asks the Court to provide an adverse jury instruction as a sanction.

3

## LEGAL STANDARD

Spoliation involves the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Wells v. BNSF Railway Co.*, 2023 WL 8434778, (D. Mont. Aug. 18, 2023). "There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting *Fjelstad v. Am. Honda Motor Co.,* 762 F.2d 1334, 1337-38 (9th Cir. 1985)). Sanctions for spoliation of evidence include a dismissal of a claim, a negative inference jury instruction, or the exclusion of certain evidence. *Kopitar v. Nationwide Mut. Ins. Co.*, 266 F.R.D. 493, 499–500 (E.D. Cal. 2010) (citations omitted). The party moving for sanctions bears the burden of proof. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015).

## DISCUSSION

BNSF argues that Stovern's decision immediately following Decedent's death not to have an autopsy performed constitutes spoliation of evidence. (Doc. 44 at 4.) BNSF contends that the Court should enter default judgment against Stovern's survival claim as an appropriate sanction for refusal to have an autopsy

4

performed. (*Id.*) The Court disagrees. Sanctions under these circumstances proves inappropriate.

A court may enter a dispositive sanction after considering the following factors:

1. Existence of extraordinary circumstances;

2. Willfulness, bad faith or fault by the offending party;

3. The relationship between the misconduct and the matters in controversy;

4. The efficacy of lesser sanctions;

5. The risk of prejudice to the party seeking sanctions; and

6. The public policy favoring disposition of cases on their merits.

*Halaco Engineering Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988); *Peschel v. City of Missoula*, 664 F. Supp.2d 1137, 1142 (D. Mont. 2009). The Ninth Circuit concluded that dismissal as a sanction proves appropriate when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon*, 464 F.3d at 958.

As a threshold matter, "it is the public policy of this state to provide an orderly and uniform system to determine which individuals hold the right to direct and carry out funeral and disposition arrangements for the remains of deceased individuals." Mont. Code Ann. § 37-19-902. A surviving parent of a decedent, if no surviving spouse or child exists, has the rights and duties to control the

disposition of the decedent's remains, including the location, manner and conditions of disposition. Mont. Code Ann. § 37-19-904(2)(e).

Stovern, as the surviving parent of Decedent, had the absolute right to control the disposition of remains of Decedent. Montana law authorized Stovern to seek transfer of Decedent's body to a funeral home for cremation instead of seeking an autopsy. "The lawful cremation of a family member's remains is not an 'act of destruction' in the spoliation context, nor does [plaintiff's] decision to have her son's remains cremated evince an intent to destroy evidence." *Adventist Healthcare, Inc. v. Mattingly,* 223 A.3d 1025, 1026 (Md. App. 2020). Stovern's decision to have her son's remains transferred and cremated, rather than undergo an autopsy, cannot be considered a spoliation or intentional destruction of evidence.

Stovern also argues that BNSF was never entitled to have an autopsy performed on Decedent. (Doc. 84 at 9. (citing Mont. Code Ann. § 50-21-103)). The Court agrees. Montana law calls for a compulsory autopsy only under limited circumstances, including but not limited to, when a family member gives permission, a coroner is authorized to hold an inquest, or when a veteran dies in a U.S. hospital. Mont. Code Ann. § 50-21-103. None of those circumstances apply. No Montana law or authority required Stovern to give permission to Sherriff

Frederick to have an autopsy performed on Decedent. Any right to an autopsy on Decedent's body dissolved when Stovern declined to give permission.

BNSF cites no authority that requires a party to have an autopsy report to assert a survival claim. The standard for proving a survival claim requires Stovern to prove that Decedent did not die instantaneously and survived for an appreciable amount of time. *McCormick v. W. Mont. Mental Health Ctr.*, 2003 Mont. Dist. LEXIS 2126, at *4 (Mont. Dist. Ct. 2003). The Court previously concluded that Stovern has produced sufficient evidence to survive summary judgment, even without having an autopsy report. (Doc. 103.)

The Court determines further that none of the *Halaco Engineering Co.* factors weigh in favor of awarding a dispositive sanction to BNSF based on Stovern's decision to forego an autopsy report. Stovern decided not to have an autopsy performed and instead to have Decedent's body immediately transferred to a funeral home in Sidney, Montana. The Court presumes that Stovern was not thinking clearly immediately after her son's death of the possibility of litigation against BNSF. Stovern certainly was not willingly, or in bad faith, attempting to destroy evidence relevant to any litigation at the time she refused to authorize the autopsy.

The conversation between Sheriff Frederick and Stovern relating to potential litigation and the need for an autopsy does not change the Court's finding. Stovern

in that moment had to make an important decision, following a traumatic event. The Court cannot fault Stovern for making a decision regarding the disposition of Decedent's body, even if she had conversations about her potential litigation against BNSF.

Stovern did not demonstrate any misconduct by failing to have an autopsy performed. To sanction a grieving mother for her decision regarding Decedent's remains does not comport with Montana public policy. Surviving family members have the right to make decision on what to do with human remains following a death. Stovern's refusal to authorize an autopsy does not constitute an abuse of the litigation process. *Adventist Healthcare, Inc.,* 223 A.3d at 1026.

The Court acknowledges that not having the autopsy report may prejudice BNSF in the litigation of Stovern's survival claim. Under these circumstances, however, the Court finds that BNSF's disadvantage does not establish extraordinary circumstances warranting sanctions against Stovern. Stovern also similarly may be prejudiced without an autopsy, if the autopsy would have provided information that Decedent did not die instantaneously.

BNSF remains able to provide a defense to Stovern's survival claim. Both Stovern and BNSF have found experts to testify to Decedent's time and cause of death. BNSF has obtained its expert witnesses to testify that it is more than likely Decedent died instantaneously on impact at the speed and force that the BNSF

railcar was traveling when it struck Decedent. This evidence may be sufficient to defeat Stovern's survival claim at trial. BNSF can present its competing evidence at trial and cross-examine Stovern's witnesses who contend Decedent survived for an appreciable amount of time.

BNSF experiences minimal prejudice in the absence of an autopsy. Based on the parties competing survival evidence and testimony, the jury can decide Stovern's survival claim. (*See* Doc. 103.) Not having an autopsy report on Decedent's time and cause of death does not "interfere with the rightful decision of the case." *Anheuser-Busch, Inc. v. Natural Benverage Distribs.,* 69 F. 3d 337, 353-54 (9th Cir. 1995).

## CONCLUSION

Stovern's decision to not authorize an autopsy following Decedent's death does not constitute spoliation of evidence. The Court declines to exercise its discretion to award sanctions to BNSF. Stovern's decision to refuse an autopsy immediately following Decedent's death does not warrant sanctions. The Court declines to offer an adverse inference instruction to the jury as a sanction. The Court would reconsider any adverse inference instruction at trial if the evidence presented to the jury were to support such an instruction.

## ORDER

Accordingly, **IT IS ORDERED** that BNSF's Motion for Sanctions (Doc. 47)

is **DENIED.**

DATED this 4th day of December, 2025.

_____

Brian Morris, Chief District Judge
United States District Court